## Provident Savings Life Assurance Society of New York v. Joseph B. Marshall, Administrator.

### Gen. No. 12,068.

1. INSURANCE POLICY—*who proper plaintiff to recover cash surplus of premiums.* The assured, not the insured, is the proper plaintiff to recover a surplus arising from premium payments which are agreed to be returned in cash, where the promise to pay contained in the policy is made to the assured and not to the insured.

2. INSURANCE POLICY—*how construed.* An insurance policy will be construed most strongly against the insurer.

3. INSURANCE POLICY—*what does not give right to apply surplus in diminution of mortuary premiums.* Held, from the particular language of the policy in question in this case, that the insurance company had no right, without the consent of the insured or the assured, to apply the surplus of premiums in diminution of the mortuary premiums.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed October 16, 1905.

**Statement by the Court.** August 7, 1885, appellant Society issued its policy upon the life of Henry V. Marshall, by which it promised to pay to "Amanda C. Marshall,

wife of Henry V. Marshall, the assured, under this policy, or to the legal representatives or assigns of said assured, in the city of New York, the sum of $5,000 within 90 days after due notice and satisfactory proof of the death of Henry V. Marshall of Maywood, Cook county, Illinois, the insured under this policy, provided such death shall occur on or before twelve o'clock noon on the 7th day of November 1885."

The policy also provides that if the assured shall pay each quarter of each year a mortuary premium as called for by the Society in accordance with the schedule of rates printed on the back of the policy, and also an expense charge of 75 cents on each $1,000 insured therein, the insurance shall continue in force. It also provided that "seventy-five per cent. of each mortuary premium paid hereon will be at once deposited in trust in the Hanover National Bank of New York, or such other bank as may be designated by the Society, and shall constitute the death fund to be used solely in settlement of death claims. The residue of each mortuary premium will be deposited with the Farmers' Loan & Trust Company of New York, or invested in securities authorized by law, for investments in trust companies, for the guaranty fund additional to the capital and as a further protection to policy-holders. The full share of the surplus thus obtained, contributed by each policy remaining in force for ten or more years may be applied to lessen mortuary premiums or withdrawn in cash."

The mortuary premiums were paid as called for by the Society for a period of twelve years. In the twelfth year this suit was brought by the administrator of the assured, Amanda C. Marshall, deceased, to recover 25 per cent. of these mortuary premiums.

The case was submitted to the court for trial. It was stipulated, among other things, that between August 7, 1885, and May 7, 1897, the Society had received the payments shown in the bill of particulars filed in the cause, aggregating $2,615.80; of which amount the sum of $180 is the expense fund, and the sum of $2,435 is mortuary pre-

miums; and that during the time covered by these payments said policy was in full force and effect.

The court found for the plaintiff below, and entered a judgment for 25 per cent. of such mortuary premiums with interest thereon, amounting to $815; and thereupon this appeal was perfected.

MORAN, MAYER & MEYER, for appellant.

HELMER, MOULTON & WHITMAN, for appellees.

MR. JUSTICE BALL delivered the opinion of the court.

The right of action is in the plaintiff below. The policy names Amanda C. Marshall as the *assured* and her husband, Henry V. Marshall, as the *insured*. The agreement is with her and the promise is to pay to her. She having died, this right of action passed to her administrator.

As we read this policy, the Society agreed that it would call each quarter for a mortuary premium not greater than is named in the schedule on the back of the policy; that when received, 75 per cent. of each premium should be deposited in trust in bank and should constitute the death fund, to be used solely in settlement of death claims; that the remaining 25 per cent. thereof should "be deposited with the Farmers Loan & Trust Company of New York or invested in securities authorized by law, for investments in trust companies, for the guaranty fund additional to the capital, and as a further protection to policy-holders"; and that the full share of this surplus contributed by each policy remaining in force for ten or more years might be applied to lessen the mortuary premiums or be withdrawn in cash by the assured.

The admission of appellant that from 1885 to 1897, as called for, there were paid to it mortuary premiums amounting to $2,435.80 under the terms and conditions of this policy, puts upon it the burden of showing that either directly or indirectly it applied this 25 per cent. of the mortuary fund to the payment of death losses, and this with the

knowledge of the assured, her legal representatives or assigns or of the insured, Henry V. Marshall.

The wording of the policy is that of the Society. It is elementary that all doubtful readings in such a contract are to be construed against the party drawing it. The provision of the policy that "the full share of the surplus thus obtained  *  *  *  may be applied to lessen mortuary premiums or be withdrawn in cash," does not give the Society the right to apply such surplus or any part of it, in diminution of the mortuary premiums without the consent of the other parties to the contract.

In the same category is the provision that "the mortuary premiums  *  *  *  will be diminished by the surplus portion of the preceding premium not appropriated by reason of actual claims by death." In our opinion this provision relates to 75 per cent. of each mortuary premium which is specifically set apart to be used solely in settlement of death claims.

It is contended that the quarterly receipts given by the Society upon payment of the mortuary premiums by 'the use of the words "less return premium," or "less rebate or dividend," gave notice to the insured and to the assured that the 25 per cent. specifically set apart "for the guaranty fund additional to the capital and as a further protection to policy-holders," was being drawn upon to pay death losses; and that therefore, even if the contract as to the right to make such application was of doubtful construction, the Society gave it that construction for ten years, and the plaintiff below having acquiesced in that construction for that length of time, is bound thereby.

The defect in this argument is that neither phrase states definitely, nor even by fair inference, that this 25 per cent. so specifically set aside was being drawn upon to pay death losses. Indeed the fair reading of these phrases is that they refer to a surplus arising out of the 75 per cent. theretofore paid in constituting the death fund, and that this is the surplus that is being applied to diminish the coming mortuary premium.

Steel Company v. Carriage Company.

The receipt by the insured of the letter and check for $87.90/100 in August, 1895, "in payment of decennial di-- vidend" on this policy does not bind appellee, for the reason that neither the letter nor the check refers in any way to this guaranty fund.

Without going into the record in detail at this time it is sufficient to say that in it we find no such clear evidence that any part of this guaranty fund was paid out upon death losses chargeable under this policy; or, if it was, that either the insured or the assured had any reasonable or legal notice of this fact.

The contract in question called upon the Society to retain this guaranty fund subject to the disposal of the assured at the end of ten years from its date.    There is nothing in this record showing any change in the contract.    It follows that the finding of the learned trial Judge is correct, and therefore the judgment of the Circuit Court is affirmed.

*Affirmed.*